UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KAN MING, *on behalf of himself and those similarly situated*,

                              Plaintiff,

                                          **REPORT & RECOMMENDATION**
                *v.*                               19-CV-298-FB-SJB

2317 OMIYA SUSHI, INC., *d/b/a* OMIYA SUSHI,
OMIYA SUSHI II, INC., *d/b/a* OMIYA SUSHI, PHUI
PHUI WOO, YAT KHOW WOO, *a/k/a* "BEN", and
YAO QIN FENG,

                              Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       Plaintiff Kan Ming ("Plaintiff") commenced this collective action seeking damages for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants 2317 Omiya Sushi, Inc., doing business as Omiya Sushi; Omiya Sushi II, Inc., doing business as Omiya Sushi; Phui Phui Woo; Yat Khow Woo, also known as "Ben"; and Yao Qin Feng (collectively, "Defendants") on January 15, 2019. (Compl. dated. Jan. 15, 2019 ("Compl.") Dkt. No. 1).

       Attorney Jingcong Wu filed an answer on February 25, 2019.[1] (Answer dated Feb. 24, 2019 ("Answer"), Dkt. No. 11). On December 5, 2019, Jingong Wu moved to withdraw as counsel for some, but not all, of the parties he represented: Omiya Sushi II,

---

[1] According to the Docket Entry, the Answer was filed on behalf of "All Defendants," (*see* Dkt. No. 11), but the Answer states that Jingcong Wu was appearing on behalf of 2317 Omiya Sushi, Inc., Phui Phui Woo, and Yat Khow Woo, (*see* Answer). Subsequent filings from Jingcong Wu, however, indicate he was the attorney for "Defendants." (*See, e.g.*, Letter to Court, Dkt. No. 13).

Inc., Yat Khow Woo, and Yao Qin Feng. (Notice of Mot. to Withdraw as Counsel dated Dec. 4, 2019, Dkt. No. 23). At a status conference on February 3, 2020, the parties clarified that Attorney Robert Wu was seeking to replace Jingcong Wu as counsel for 2317 Omiya Sushi, Inc., Phui Phui Woo, and Yat Khow Woo (the "Appearing Defendants"). (Tr. of Civ. Cause for Status Conference dated Feb. 3, 2020 ("Feb. Tr."), Dkt No. 53, 4:24–5:8). The Court terminated Jingcong Wu as counsel for Defendant 2317 Omiya Sushi, Inc.[2], which would be represented by Robert Wu, and as counsel for Yao Qin Feng, finding that Yao Qin Feng never consented to Jingcong Wu's representation. (Order dated Feb. 3, 2020; Feb. Tr. at 7:5–8:7). On March 31, 2020, Attorney Robert Wu appeared on behalf of 2317 Omiya Sushi, Inc., Phui Phui Woo, and Yat Khow Woo–the Appearing Defendants–, (Notice of Appearance dated Mar. 31, 2020, Dkt. No. 29), and moved to appear *pro hac vice* on April 1, 2020, (Order for Admission *Pro Have Vice* dated Mar. 4, 2020, Dkt. No. 30).[3] Jingcong Wu then moved to withdraw as the attorney for Defendants Omiya Sushi II, Inc., Phui Phui Woo, and Yat Khow Woo. (Mot. to Withdraw as Counsel, dated Apr. 10, 2020, Dkt. No 31). The Court granted this motion with respect to Phui Phui Woo and Yat Khow Woo, but denied the motion without prejudice to renewal with respect to Omiya Sushi II, Inc.

---

[2] At the status conference, Jingcong Wu stated that 2317 Omiya Sushi, Inc. should have been included in the motion to withdraw. (Feb. Tr. at 7:24–8:4). Plaintiff's counsel also indicated that the individual defendants may not have been properly served, and the Court directed Plaintiff's counsel to tell the Court against which Defendants Plaintiff wished to proceed. (*Id.* at 8:24–:25, 12:6–:10). A summons for Phui Phui Woo was subsequently returned executed and filed on February 10, 2020. (Summons Returned Executed dated Feb. 8, 2020, Dkt. No. 24).

[3] The Court granted Robert Wu leave to appear *pro hac vice* on April 2, 2020. (Order dated Apr. 2, 2020).

(Order dated Apr. 16, 2020).[4] On September 8, 2020, Jingcong Wu filed a renewed motion to withdraw as counsel for Defendant Omiya Sushi II, Inc. (Notice of Mot. to Withdraw as Counsel dated Sept. 7, 2020, Dkt. No. 36). Following a status conference, the Court granted this motion. (Minute Entry and Order dated Sept. 15, 2020). The Court noted that Defendant Yao Qin Feng had not been properly served, and that Omiya Sushi II, Inc., a corporation, could not proceed *pro se* in federal court. (*Id.*). The Court stated that Omiya Sushi II, Inc. had until October 30, 2020 for counsel to appear on its behalf; if counsel had not appeared by that time, Plaintiff could seek a certificate of default as to Omiya Sushi II, Inc. by December 1, 2020 and move for default judgment sixty days after an entry of default. (*Id.*).

Plaintiff sought a certificate of default as to Omiya Sushi II, Inc. on November 26, 2020, (Request for Certificate of Default dated Nov. 26, 2020, Dkt. No. 42), which the Clerk of Court issued on December 3, 2020. (Certificate of Default dated Dec. 3, 2020, Dkt. No. 45). Plaintiff moved for default judgment against Omiya Sushi II, Inc. on February 2, 2021. (Notice of Mot. for Default J. dated Feb. 2, 2021 ("Mot."), Dkt. No. 48). The Honorable Judge Frederic Block referred the motion to the undersigned for report and recommendation on February 3, 2021. (Order dated Feb. 3, 2021). Although the Court directed Plaintiff to file a motion for default judgment, the Appearing Defendants continue to contest the allegations and are actively litigating. To avoid prejudicing the litigating parties, the Court respectfully recommends that the motion for

---

[4] The Court further ordered, "[t]o the extent that Jingcong Wu is unable to contact a corporate representative to appear on behalf of Omiya Sushi II, he must file a motion to withdraw, not one for [substitution], consistent with Local Rule 1.4 explaining why relieving him as counsel where no substitute counsel is available is appropriate." (Order dated Apr. 16, 2020).

default judgment be denied without prejudice to renewal upon completion of the case against the Appearing Defendants.

In *Frow v. De La Vega*, decided in 1872, the Supreme Court explained that in a multi-defendant case where defendants are alleged to be *jointly* liable, entering a default judgment runs the risk of inconsistent judgments. 82 U.S. 552 (1872). That is, there is a risk that the defaulting party is held liable, while the non-defaulting party that litigates is found not liable. Such a result is inconsistent because joint liability requires all defendants to be liable for any one of them to be liable. *Id.* at. 554 ("If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill."). The proper course in such a situation is to postpone decision on the default judgment until the case against the litigating party concludes; if the litigating party loses, the default judgment can then be entered against the non-appearing party, and if the litigating party wins, the default judgment motion should be denied. *Id.* ("[I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."); *see also RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 414 (S.D.N.Y. 2009) ("More than 125 years ago, the Supreme Court held that when a defendant defaults in an action asserting joint liability, judgment

4

should not be entered against the defaulting defendant until the matter has been resolved against the other defendants[.]") (quotations omitted), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *Peralta v. Roros 940, Inc.*, No. 11-CV-6242, 2016 WL 1389597, at *1 (E.D.N.Y. Apr. 6, 2016) (following *Frow*) ("[W]hen one defendant defaults in a multi-defendant case, the district court should not enter a final decree on the merits against the defaulting defendant alone[.]"); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2690 (4th ed. 2018) ("[W]hen one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.").

*Frow* applies to claims asserting that defendants are jointly liable. But what is *joint* liability? A claim is one for joint liability where "as a matter of law, no one defendant may be liable unless all defendants are liable, or . . . when the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.36 (3d ed. 2018). Said differently, "[j]oint or common liability arises when a tortious act is committed by several persons acting in concert." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980). Joint liability stands in contrast to independent liability—also referred to as several liability—where one defendant commits a tort "without the aid of other defendants." *Id.* Where there is a claim premised on joint liability, it is impossible for one defendant to be liable unless all other defendants are also liable. When one defendant defaults on a joint liability claim, entering the default judgment prematurely raises the specter of an inconsistent judgment. Although the defaulting defendant is found liable, the other litigating defendant could subsequently

5

be found not liable, even though the nature of the claim requires each and every defendant to be liable for any one of them to be liable.

The *Frow* rule—that in a multi-defendant case, a default judgment should not be entered until litigation has completed against all parties—does not apply simply because there are multiple defendants in the case. In this Circuit, "at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of others." *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976).

Joint liability is distinct from "joint and several liability." What is *joint and several* liability? "Joint" refers to—as defined above—liability imposed on several defendants acting together. The "several" in "joint and several" liability refers to individual liability, a liability not dependent on the actions of others. *In re Uranium Antitrust Litig.*, 617 F.2d at 1257. A claim alleging "joint and several liability" is one where any defendant can be liable to the plaintiff in two ways: (1) regardless of whether any other defendant is liable ("several" or individual liability) or (2) where the defendant acted in concert with each and every defendant ("joint" liability). When a claim alleges joint and several liability and one defendant is found liable and other defendants are not, the two judgments are not inconsistent. That is because although the theory of "joint" liability has failed, the theory of "several" liability permits one defendant to be liable, even when the others are not. *E.g., id.* ("When [joint and several] liability coexist in a single claim, . . . [i]f all twenty-nine of the defendants [are] found culpable of price-fixing, Westinghouse could seek to satisfy its judgment and damages award against all the defendants, or single out one price-fixer. But at the same time, only a small group of the defendants might be found to have conspired to fix the price of uranium, and the remaining defendants would be exonerated. Such a finding of liability as to nine

6

defendants is not inconsistent with a finding of no liability as to the other twenty, because liability is potentially 'several' as well as 'joint.'").

The present action alleges a theory of joint and several liability, namely that each and every one of the Defendants was a joint employer of Plaintiff. A party is an "employer" under FLSA "in situations where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 128 (E.D.N.Y. 2011) (quotations omitted). And "an employee may simultaneously have multiple 'employers' for the purposes of determining responsibility under the FLSA." *Toribio v. Abreu*, No. 18-CV-1827, 2018 WL 6363925, at *3 (E.D.N.Y. Nov. 15, 2018), *report and recommendation adopted*, 2018 WL 6335779 (Dec. 4, 2018). If the Defendants are deemed to be Plaintiff's employers, they are exposed to joint and several liability. *See* 29 C.F.R. § 791.2(f) ("For each workweek that a person is a joint employer of an employee, that joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the Act, including the overtime provisions, for all of the hours worked by the employee in that workweek."); *see, e.g., Perez v. Manna 2nd Ave. LLC*, No. 15-CV-4655, 2017 WL 780812, at *3 (S.D.N.Y. Feb. 28, 2017) ("[T]he defendants jointly employed the employees and are jointly and severally liable under the FLSA for any damages award."). Thus, Plaintiff alleges that because each Defendant employed him, they are each jointly and severally liable.

Courts in this Circuit have routinely declined to apply *Frow* in cases asserting joint and several liability and proceeded to decide the default judgment motion while

7

other parties are litigating. *See, e.g., Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151, 2013 WL 5951162, at *6–7 (S.D.N.Y. Nov. 1, 2013) (deciding both liability and damages as to one defaulting defendant). Nonetheless, even if *Frow* is inapplicable, it does not follow that the Court should now resolve the motion for default judgment in this case. The possibility of inconsistent damages calculations leads courts in FLSA cases to refrain from issuing interim decisions when not all parties have defaulted. *Gesualdi v. MMK Trucking, Inc.*, No. 09-CV-1484, 2010 WL 3619569, at *5 (E.D.N.Y. Aug. 24, 2010) ("The *Frow* holding has been narrowed to cases involving true joint liability. Nonetheless, courts have also consistently delayed damages inquests even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations.") (quotations omitted), *report and recommendation adopted*, 2010 WL 3619719 (Sept. 9, 2010); *see, e.g., Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565, 2016 WL 4179942, at *6 (E.D.N.Y. Aug. 5, 2016) (withholding the determination of damages on default judgment against non-appearing corporate defendants under FLSA and NYLL); *Palma-Castillo v. New Tacolandia Inc.*, No. 09-CV-10374, 2011 WL 7092652, at *2 (S.D.N.Y. May 9, 2011) (same).

   There are reasons to avoid a decision on liability as well. There is simply no reason at this stage of the case to determine liability. A determination of liability against the Omiya Sushi II, Inc. does nothing for the Appearing Defendants. Without a damages calculation to accompany the liability determination, no final judgment could be entered in their favor, and there could be no enforceable judgment that Plaintiff could attempt to collect. It would only be a partial resolution of the pending motion.

Moreover, no discernable prejudice accrues to Plaintiff, since resolving liability against the Omiya Sushi II, Inc. does not assist him in litigating the case against the Appearing Defendants.  He would still have to prove that the Appearing Defendants violated FLSA by failing to pay them full wages and overtime.  In other words, Plaintiff would still have to prove that the Appearing Defendants employed him and violated FLSA.  The allegations in the Complaint that treat Defendants collectively may be accepted as true for purposes of default judgment, (*see, e.g.*, Compl. ¶ 2 ("Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked and overtime compensation for all hours worked over forty (40) each workweek.")), but they would not be assumed true for the purposes of litigation between Plaintiff and the Appearing Defendants.  Any liability determination on default is based solely on the complaint and made solely for the purpose of calculating damages.  Such a liability determination has no collateral estoppel or law of the case effect on the parties who are actually appearing.  *Associated Int'l Ins. Co. v. Crawford*, 182 F.R.D. 623, 629 (D. Colo. 1998) ("[A] default judgment, containing only the conclusions sought by plaintiff, exists, without any testing of those conclusions by trial or argument. . . . No preclusive rule, whether it be collateral estoppel, res judicata, or law of the case, is applicable[.]").  Plaintiff still would have to come forward with proof, *i.e.* something beyond the Complaint, that the Appearing Defendants violated FLSA.  As another court explained in a RICO action where the plaintiff attempted to use the default judgment to short-circuit the proof needed against the litigating parties, a liability determination made on default has very limited utility:

9

> Maersk argues that the findings in the default judgments entered against the five Defaulting Defendants establish the existence of a RICO enterprise as the law of the case. Maersk's reliance on the law of the case doctrine is misplaced: the law of the case doctrine only applies to issues that have actually been decided. Here, the default judgments were entered against the Defaulting Defendants for failure to respond, and in no way constitute decisions on the merits of Maersk's claims. And, while Magistrate Eaton properly accept[ed] as true all of the facts alleged . . . he did so merely for purposes of determining damages. Thus, while entry of the default judgments may have presumptively established the sufficiency of Maersk's *pleadings*, it does not provide a basis for awarding Maersk summary judgment.

*Maersk, Inc. v. Neewra, Inc.*, 687 F.Supp.2d 300, 334 (S.D.N.Y. 2009) (citations and quotations omitted), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011).

The Court believes the more prudent and efficient course is to avoid decision on the default judgment motion against the Omiya Sushi II, Inc. Doing so avoids the risk of inconsistent outcomes on the question of damages. And there is no advantage or purpose served on resolving only the liability portion of the motion for default judgment. The Court, therefore, respectfully recommends the motion for default judgment be denied without prejudice to renewal upon resolution of the case against the Appearing Defendants.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").

10

Plaintiff shall serve a copy of this Report and Recommendation on Omiya Sushi II, Inc. and file proof of such service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara*  April 5, 2021

SANKET J. BULSARA

United States Magistrate Judge

Brooklyn, New York

11